

**ORDERED in the Southern District of Florida on November 21, 2014.**

Tagged Opinion

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO: 11-36161-BKC-LMI |
| Priscilla Nachon-Torres, | |
|     Debtor. | |
| _____/ | |
| IN RE: | CASE NO: 12-23696-BKC-LMI |
| Liliana Martinez, | |
|     Debtor. | |
| _____/ | |
| IN RE: | CASE NO: 09-30391-BKC-LMI |
| Christopher O. Garcia and Tina Garcia, | |
|     Debtors. | |
| _____/ | |
| IN RE: | CASE NO: 10-25816-BKC-LMI |
| Luis Daniel Luyando, | |
|     Debtor. | |
| _____/ | |

**MEMORANDUM OPINION REGARDING**
**MODIFICATION OF CHAPTER 13 PLANS**

The four cases to which this opinion applies[1] have required me to directly address a question that has been on the periphery of several of my prior rulings—is there a non-statutory threshold for seeking modification of a chapter 13 plan? The resolution of this issue will provide a framework for the issues I must consider in these four cases.

> **a)** Is the chapter 7 test calculated from the original petition date or the modification date?
>
> **b)** What is the consequence, if any, of the appreciation in, or depreciation in, value of an asset from the original petition date to the modification date?
>
> **c)** What is the consequence of a debtor's abandonment of an asset during the plan period?

## THE DEBTORS

### Priscilla Nachon-Torres

Ms. Nachon-Torres filed her chapter 13 bankruptcy case on Sept. 22, 2011. She listed the value of her 2006 Hummer H2 on her schedules at $25,000. On June 25, 2013 Ms. Nachon-Torres filed a Motion to Modify.[2] She stated she could no longer afford her plan payments, but because she had made a mistake when she valued her car, the chapter 7 test could be recalculated to a lower amount, reflecting the vehicle's lower value, and she could then pay the recalculated, lower, payments. Ms. Nachon-Torres alleged the car was worth only $14,000 on the petition date (she realized this amount as the trade-in value for a new car). The chapter 13 Trustee objected,[3] arguing first that the motion to modify was filed in bad faith because the change in circumstances (the mistaken car valuation) was neither substantial nor unanticipated. Second, the Trustee asserted that it was inappropriate for Ms. Nachon-Torres to change a value after the fact, especially where, by trading in the car, she deprived the Trustee of the ability to challenge the

---

[1] I delivered an oral ruling in three of these four matters on May 6, 2014 in which I summarily outlined the parameters for modification detailed in this opinion. The Martinez matter is the only one which remains unresolved.
[2] Case No. 11-36161-BKC-LMI, (ECF #119).
[3] I entered a scheduling order in the Nachon-Torres case (ECF #132). The Trustee filed two memoranda of law in these cases—one on October 30, 2013 (ECF #138 in the Nachon-Torres case, and one on December 9, 2013 (ECF #143 in the Nachon-Torres case). Ms. Nachon-Torres filed a response (ECF #142).

valuation.  Finally, the Trustee argued, the chapter 7 test, even when a plan is modified, must be as of the original plan date, not the date of the modified plan.

**Liliana Martinez**

When Ms. Martinez filed bankruptcy she owned an interest in a time share, which she decided to keep.  The chapter 7 test included a $1,000 value attributable to the timeshare, the value of which the chapter 13 Trustee did not dispute. Ms. Martinez filed a bankruptcy plan with an applicable commitment period of forty-four months.  Her Second Amended Plan was confirmed on December 31, 2012.[4]  That Plan provided that unsecured creditors would receive payments of $56.00 in months 1 – 36 of the plan, and $111.36 in months 37-44 of the plan. Later Ms. Martinez determined that she couldn't afford the timeshare, and, because the timeshare value was "of little consequence", the timeshare should be abandoned.  Her Motion to Abandon[5] was granted, without objection, on August 15, 2013.[6]  Ms. Martinez then moved to modify her plan, seeking to recalculate the chapter 7 test as of the modification date (this time omitting any value attributable to the time share), and, due to the reduced chapter 7 test calculation, proposing to eliminate the payments due to unsecured creditors in months 37-44 of the plan—thereby completing her plan in 36 months rather than 44 months.

The Trustee objected on several grounds—first, that had Ms. Martinez originally filed a chapter 7 case, the chapter 7 trustee would have had the benefit of the value of the timeshare, so Ms. Martinez's decision to abandon the timeshare post-confirmation shouldn't alter the original chapter 7 calculation;  in other words, the chapter 7 test should be calculated as of the original

---

[4] Case No. 12-23696-BKC-LMI, (ECF #58).
[5] Case No. 12-23696-BKC-LMI, (ECF #60).
[6] Case No. 12-23696-BKC-LMI, (ECF #63).

petition date, not the date of the proposed modification.[7] Second, if there should be any reduction in the chapter 7 test, it should be limited to a circumstance that is not in the control of a debtor.[8]

In one of the two subsequent omnibus objections to Ms. Martinez' proposed modification, the chapter 13 Trustee further argued that the act of abandoning property is not an unforeseen circumstance that would warrant modification, and that when Ms. Martinez filed her motion to abandon she never suggested she would then seek to reduce payments to creditors on account of that abandonment. Finally, "a debtor should not be allowed to waste part of his estate in order to reduce the amount necessary to pay his creditors." The Trustee argues that Ms. Martinez's attempt to modify is in bad faith and modification should be denied.

**Christopher and Tina Garcia**

Mr. and Mrs. Garcia owned a piece of property that apparently appreciated in value during their chapter 13 case. The property was valued at $49,152 as of the petition date, and for purposes of calculating the chapter 7 test, but the property was sold a year after the bankruptcy was filed for $58,655 (the property apparently had no encumbrances). The Garcias proposed to pay off their plan either prior to the expiration of the five year applicable commitment period rather than increase the amount to be paid to their unsecured creditors by the $9,503 increase in the value of the sold property, or keep the proceeds of the sale and continue making the scheduled payments required under the confirmed plan.

The Trustee filed a Motion to Modify the Garcias' plan[9] to pay that increase in value to the unsecured creditors, arguing that if the date to determine value is the date of modification then the Trustee's proposed modification is appropriate.[10]

---

[7] Case No. 12-23696-BKC-LMI, (ECF #67).
[8] Case No. 12-23696-BKC-LMI, (ECF #70).
[9] Case No. 09-30391-BKC-LMI, (ECF #112).

**Luis Daniel Luyando**

Mr. Luyando filed bankruptcy on June 4, 2010. On July 9, 2010, Mr. Luyando filed a plan that proposed to pay all unsecured creditors 100% of their claims over a period of five years. That plan was confirmed on August 26, 2011. Mr. Luyando filed a motion to modify on August 22, 2013, claiming his income had decreased drastically.[11] The modified plan sought to pay the sole unsecured claim (the stripped down portion of a mortgage) less than 100% over the remaining months of the plan. The Trustee argued that, although Mr. Luyando's income may have changed, the value of his non-homestead property increased, therefore, it would be appropriate to adjust the plan payments to the unsecured creditor to reflect the increase in value of the property.[12]

## MODIFICATION OF CHAPTER 13 PLANS

Modification of chapter 13 plans is governed by 11 U.S.C. §1329 which authorizes modification of a plan any time after confirmation but before payments are complete under four circumstances: (a) to increase or reduce payments on claims; (b) to extend or reduce the time for payment (subject to a cap of five years); (c) alter the amount payable to a particular creditor who may have received payments outside of the plan; and (d) to address changes in health insurance costs. Modifications to a plan may be sought by the debtor, the chapter 13 trustee, or any holder of an allowed unsecured claim.

**When Is Modification Appropriate?**

---

[10] There appear to be a few typographical errors in the Trustee's Motion to Modify. For instance, that the Garcias submitted funds to pay the plan in full on June 23, 2011 as opposed to June 23, 2013. Also, the plan commitment period is referenced as ending on September 25, 2012, rather than on September 25, 2014. For the purposes of this opinion, I assume the Trustee meant to put the correct dates.

[11] Case No. 10-25816-BKC-LMI, ECP #119. Mr. Luyando's adjusted gross income went down from $28,894 in 2011 to $26,617 in 2012. *See* ECF #112. He ultimately withdrew the Motion to Modify. *See* ECF #189.

[12] Mr. Luyando did not seek recalculation of the chapter 7 test in his case.

One common question runs through these four cases—when is it appropriate to seek modification of a chapter 13 plan? Notwithstanding that a proposed modification may fit within the four stated statutory purposes, ultimately modification lies within the bankruptcy court's discretion, as section 1329 provides that a plan *may* be modified, not that a plan shall be modified. Thus, modification "involves a "two-step process." *In re McAllister,* 510 B.R. 409, 413 (Bankr. N.D. Ga. 2014). The court must not only consider whether a proposed modification satisfies the "technical requirements" of section 1329, but also whether, under the circumstances of a particular case, the court should allow modification.

There is a split amongst the courts as to how that discretion should be applied—one significant group of courts hold that modification is only appropriate when there has been a change that is both substantial and unanticipated. *See, e.g., In re Woodhouse*, 119 B.R. 819, 820 (Bankr. M.D. Ala. 1990) ("[U]nless there are substantial unanticipated changes in the debtor's ability to pay under a plan already confirmed, the rights of the debtor and his creditors are settled at the date of confirmation."); *In re Euler*, 251 B.R. 740 (Bankr. M.D. Fla. 2000).

Conversely, other courts hold that that since section 1329 does not include any requirement of "substantial or unanticipated" change, courts should not impose such a condition. *See, e.g., Matter of Witkowski*, 16 F.3d 739, 748 (7th Cir. 1994) ("Section 1329 does not require any threshold requirement for a creditor, debtor or trustee to seek modification of an approved bankruptcy plan."); *Ledford v. Brown (In re Ledford)*, 219 B.R. 191, 195 (B.A.P. 6th Cir. 1998) ("Although the court may properly consider changed circumstances in the exercise of its discretion, § 1329 does not contain a requirement for unanticipated or substantial change as a prerequisite to modification."). According to this view, there are no restrictions on a party's ability to seek modification, so long as the proposed modified plan conforms with the

6

requirements of section 1329 and the court otherwise finds that modification is appropriate under the facts and circumstances. *See, e.g., In re McAllister*, 510 B.R. at 413 (applying a "totality of the circumstances" analysis in considering the appropriateness of the chapter 13 trustee's motion to modify).

Many courts consider the *res judicata* effect of a final confirmation order as being dispositive of this issue. *See In re Euler*, 251 B.R. at 746 (ruling that significant appreciation in an asset owned by the debtor on the petition date did not warrant the modification sought by the trustee because "[a]ll participants in the bankruptcy case are barred by the doctrine of res judicata from asserting matters they could have raised in the bankruptcy proceedings.…Accordingly, principles of claim preclusion or res judicata bar a trustee from raising as grounds for modification facts that were known or could have been raised in the bankruptcy proceedings.").[13] But *res judicata* is not a complete back stop. Indeed, section 1329 creates an exception to the *res judicata* effect of the confirmation order. *See Witkowski*, 16 F.3d at 746. ("The common law principle of res judicata . . . does not apply 'when a statutory purpose to the contrary is evident' . . .[T]he clear and unambiguous language of §1329 … clearly demonstrates that the doctrine of res judicata does not apply." (citations omitted)). *See also Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000). Thus, a necessary function of a court's exercise of discretion in considering a modification is when the confirmation order should be revisited.

But what should be the triggering factor? When should the *res judicata* impact of a confirmation order be modified? Should there be some kind of a threshold before the bankruptcy

---

[13] Holding that a four-fold increase in equity of the debtor's townhouse did not warrant modification because the townhouse was a known asset when the plan was confirmed and the treatment of the townhouse in the confirmation order was res judicata and not subject to modification.

court will even consider whether the modification sought is otherwise appropriate? Or should a court exercise its discretion without any particular framework?[14]

Interpreting section 1329 to allow modification for any change would be inconsistent with the manner in which chapter 13 is constructed. Modification is not a tool that can or should allow a debtor, the chapter 13 trustee or an unsecured creditor to make an end run around the confirmation process. Consequently, it is not appropriate to consider a modification, even if the modification falls within one of the four stated purposes of section 1329(a)(4), if the relief proposed would not have been permitted at the time the plan was initially confirmed - for example, a creditor's request that property that is not property of the debtor should be used to pay creditors. *See Euler*, 251 B.R. 740; *In re Barbosa*, 236 B.R. 540, 547 (Bankr. D. Mass. 1999), *aff'd sub nom Barbosa v. Solomon*, 235 F. 3d 31, 41 (1st Cir. 2000) ("[M]otions to modify cannot be used to circumvent the appeals process for those creditors who have failed to object to confirmation of a chapter 13 plan or whose objections to confirmation have been overruled.")[15]

The United States Supreme Court has provided a context for this inquiry. In *Hamilton v. Lanning*, 560 U.S. 505 (2010), the Supreme Court resolved the debate about the meaning of "projected disposable income," and how, in the context of confirmation of an original chapter 13 plan, a debtor must account for the income calculation requirements of confirmation. In resolving this dispute, the Supreme Court held that when calculating projected disposable income, the court may account for changes in the debtor's income or expenses that are "known

---

[14] This opinion does not address contractually agreed-to triggers for modification. Thus, for example, in the Southern District of Florida, the chapter 13 plans sometimes include income verification language ("IVL"). With the IVL, incorporating in part the provisions of 11 U.S.C. §521(f), the chapter 13 trustee reserves the right to seek modification of payments if the debtor's tax returns show a certain increase in salary. *See generally In re Deliz-Medina*, 2013 WL 5952409 (Bankr. S.D. Fla. Nov. 7, 2013).

[15] *Accord In Re Rhymaun,* 2011 WL 9378787 (Bankr. S.D. Fla. Aug. 8, 2011) (a debtor cannot modify a plan to pay-off the remaining amount owed under the original plan prior to the expiration of the applicable commitment period unless payment to creditors is in full, since in the Eleventh Circuit, the applicable commitment period is durational).

or virtually certain at the time of confirmation." *Id.* at 524. Accordingly, in order to give appropriate context to a threshold consideration in any determination whether and when modification is appropriately sought under section 1329, I find that there must have been a change that was neither known nor virtually certain at the time of confirmation. *Cf. Waldron v. Brown (In re Waldron)*, 536 F. 3d 1239 (11th Cir. 2008) (an asset that the debtor acquired unexpectedly after confirmation was property of the chapter 13 estate); *In re McAllister*, 510 B.R. 409 (a windfall to the debtor such as winning the lottery or receiving a substantial inheritance might warrant modification of a debtor's chapter 13 plan).

Therefore, in determining whether to grant a motion to modify, I will consider the following - first, whether the proposed modification fits within the statutory prerequisites; second, whether the circumstances giving rise to the proposed modification were either unknown or not virtually certain at the time of confirmation; and finally, whether the circumstances otherwise warrant modification.

### **The "Best Interests of Creditors" or "Chapter 7" Test**

Another issue common to each case under my consideration is, if modification is appropriate, what date should be used for determining the chapter 7 test - the original petition date or the modification date?

Section 1329(b) requires that any modified plan satisfy the requirements of section 1325(a)(4)[16], often referred to as the "best interests of creditors" test or the "chapter 7" test. The test requires that a plan pay unsecured creditors at least what they would have received in a chapter 7 case. Failing this, a plan may not proceed.

---

[16] "(a) Except as provided in subsection (b), the court shall confirm a plan if--
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date ...."

9

There is a split of opinion amongst the courts whether, when a chapter 13 plan is modified, the chapter 7 test should be calculated as of the original petition date or as of the date of modification. While there are some well-reasoned decisions why the calculation should remain as of the original petition date, *see, e.g., McAllister,* 510 B.R. 409, and *Euler,* 251 B.R. 740, I agree with the majority of the cases that have found that the appropriate date for calculation is the modification date. *In re Auernheimer*, 437 B.R. 405 (Bankr. D. Kan. 2010); *In re Morgan*, 299 B.R. 118 (Bankr. D. Md. 2003); *In re Nott*, 269 B.R. 250 (Bankr. M.D. Fla. 2000); *In re Barbosa*, 236 B.R. 540. The statute provides that the date of the modified plan is the appropriate date for calculating the chapter 7 test, the legislative history supports this interpretation if, in fact, the statute is ambiguous, and finally, Eleventh Circuit case law requires such an interpretation.

**The statute**

11 U.S.C. §1325(a)(4) requires the chapter 7 liquidation value be the value "as of the effective date of the plan." Section 1329(b)(2) specifically states that the modified plan becomes the plan unless the modification is not approved. Taken together with section 1329(b)(1) which provides that any modification must comply with section 1325(a), there should not be any issue that the date as of which the chapter 7 test must be calculated is the date of the modified plan. Nonetheless, some courts have seemingly disregarded the language of section 1329(b)(2) and held that "the plan" is always the original plan. *See, e.g., In re Forbes*, 215 B.R. 183, 188 (B.A.P. 8th Cir. 1997).

**The legislative history**

Legislative history is of limited use and should be referred to only when "(1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd

result; or (3) there is clear evidence of contrary legislative intent." *Whaley v. Tennyson (In re Tennyson),* 611 F.3d 873, 877 (11th Cir. 2010) (*quoting United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999)). One could argue that the debate amongst the courts illustrates the statute is ambiguous[17]; in any event, the legislative history is instructive. The incorporation of the chapter 7 test to any modification originated with the enactment of the Bankruptcy Code. The legislative history specifically states that "application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan." H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6387.[18]

**<u>Eleventh Circuit case law</u>**

Eleventh Circuit case law resolves any lingering doubts about the resolution of this issue. In struggling to determine when and to what extent the value of post-confirmation property should be made available to creditors for distribution (whether by recalculation of the chapter 7 test or otherwise) courts consider, as a determining factor, whether the post confirmation property is property of the estate. There is some debate, as reflected in the case law, as to how courts should reconcile (and thereby resolve the property of the estate issue) 11 U.S.C. §1306,[19] which provides that property of the estate in a chapter 13 case includes all post-petition

---

[17] "A mere disagreement among litigants over the meaning of a statute does not prove ambiguity; it usually means that one of the litigants is simply wrong." <u>Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship</u>, 526 U.S. 434, 461 (1999) (Thomas, J., concurring).

[18] The full text of the relevant history provides:
> In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, 'the plan' as used in the section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. 1323(b). Thus the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan.

[19] "**(a)** Property of the estate includes, in addition to the property specified in section 541 of this title--
**(1)** all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
**(2)** earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
**(b)** Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."

property, until the case is "closed, dismissed or converted to a case under chapter 7, 11 or 12", with 11 U.S.C. §1327(b), which provides that "confirmation of a plan vests all property of the estate in the debtor." This debate has been resolved by the Eleventh Circuit in *In re Waldron*, 536 F. 3d 1239.

In *Waldron*, the Eleventh Circuit affirmed the bankruptcy court's decision that a debtor's underinsured motorist benefits for a post-petition automobile accident were property of the estate, and that joint debtors could be compelled to amend their schedules to include this asset. 536 F. 3d 1239. In holding that assets acquired after confirmation of the chapter 13 plan are property of the estate,[20] and therefore must be disclosed, the Eleventh Circuit noted "[t]he disclosure of post confirmation assets gives the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors." *Waldron*, 536 F.3d at 1245. There would be no purpose served in holding that post-confirmation property is property of the estate if there was not a mechanism to include that property for purposes of distribution.[21] That mechanism is provided by recalculating the chapter 7 test as of the date of the modified plan.[22]

Thus, if a modification is approved, the chapter 7 test must be recalculated as of the date the modified plan is filed.

---

[20] The Eleventh Circuit cited with approval the reasoning of the First Circuit in *Barbosa v. Solomon*, 235 F. 3d 31, in its holding that assets after confirmation of a chapter 13 plan are property of the estate.

[21] While I appreciate Judge Bonapfel's analysis in *McAllister* that the mechanism for inclusion of a post-confirmation asset is the debtor's general obligation to pay what he or she is able, I don't believe that it is necessary to limit the analysis to that general philosophy which I agree, should play some role in the court's decision to authorize or mandate modification.

[22] The Eleventh Circuit cited to section 1325(b)(1)(B) in observing that "[p]ayments under a plan are based on the debtor's disposable income when the plan is confirmed." However, section 1325(b)(1) refers to "current monthly income" which is clearly defined by the Bankruptcy Code to apply to income earned within a period "prior to commencement of the case". This appears to be an error on the part of the Eleventh Circuit, but does not change the holding in *Waldron*. Moreover, it underscores the Eleventh Circuit's concern that the value of the new asset must be incorporated in the modified plan.

**THE REQUESTED MODIFICATIONS**

Having now set forth a framework for consideration of the specific disputes before me, I now return to address them in turn.

<u>**Priscilla Nachon-Torres**</u>

Ms. Nachon-Torres moved to modify her plan because, she claims, she made a mistake when she valued her car at the time she filed and confirmed her original chapter 13 plan. Her proposal to change payments to creditors fits within the threshold parameters of section 1329(a) and the alleged mistake was neither known nor virtually certain at the time of confirmation. Nonetheless, modification is not warranted. This is a case where a debtor claims to have made a mistake.[23] Assuming the trade-in value of the car was relevant to the petition date value of the car, by trading in the car prior to seeking this relief, Ms. Nachon-Torres did deprive the Trustee of the opportunity to challenge the valuation. The combination of questionable timing and the disadvantage to the Trustee and, by extension, the creditors, dictates that modification is not appropriate and the Debtor's Motion to Modify is denied.

<u>**Liliana Martinez**</u>[24]

Ms. Martinez abandoned a non-exempt asset that she owned on the petition date but that she decided she could no longer afford. Her modification seeks to recalculate her original chapter 7 test without including the value of the abandoned asset and pay off her plan earlier than originally proposed.

That a debtor may buy or sell assets after confirmation is not unlikely or unanticipated. In the span of three to five years, peoples' lives do not remain static. Ms. Martinez chose to keep a non-exempt asset. It was her choice to give up that asset post-confirmation but she cannot do so

---

[23] Initially, I denied the request as untimely as it was filed outside the one year time limit of Fed. R. Bankr. Proc. 9023.

[24] I did not rule on Ms. Martinez' motion at the May 6, 2014 hearing because her lawyer was not present.

at the expense of her creditors. Because the decision to divest herself of an asset is not an event that was not "virtually uncertain," and because modification would otherwise be inappropriate, Ms. Martinez' motion to modify is denied.[25]

**Luis Daniel Luyando**

Mr. Luyando's plan obligated him to pay his one unsecured creditor 100% of the allowed unsecured claim. Prior to my ruling on May 6, 2014, I did not have any information regarding how much Mr. Luyando's income had changed, and so I advised the parties that an evidentiary hearing was necessary, and that the change in income would need to be significant in order to meet the threshold requirement of being unknown or not virtually certain. Ultimately Mr. Luyando withdrew his motion to modify.[26]

**Christopher and Tina Garcia**

The Garcias sold a piece of property post-confirmation. The proceeds were enough to pay in full the balance of their plan in June 2011, three years before the expiration of the plan term and 18 months prior to the three year anniversary of the petition date. The Trustee argued that instead of early payoff the Debtors should modify their plan to pay more to their unsecured creditors.

The Garcias' applicable commitment period in the original plan was five years. I already ruled in *In re Abaunza*, 452 B.R. 866 (Bankr. S.D. Fla. 2011), that a debtor may not pay off a plan earlier than the applicable commitment period. In this case, the Garcias sought to "prepay

---

[25] If debtors could get rid of assets and seek to recalculate their chapter 7 test throughout the course of a case, there would be no finality to a confirmation order. Of course, if modification were granted, all of a debtor's non-exempt assets owned at the time of modification would need to be taken into account for purposes of calculating the chapter 7 test.

[26] The docket reflects that Mr. Luyando's income change was not significant and, moreover, the value of the underlying collateral had increased significantly since the petition date, suggesting that perhaps any modification would have had no impact on Mr. Luyando's plan payments.

14

the plan" prior to the expiration of the minimum applicable commitment period.[27] However, they did not file a motion to modify. I did observe at the May 6, 2014 hearing, as I did in *Deliz-Medina*, 2014 WL 2013 WL 5952409 (Bankr. S.D. Fla. Nov. 7, 2013), that the Bankruptcy Code does not obligate debtors to *sua sponte* modify their chapter 13 bankruptcy plan absent a request by the trustee or an unsecured creditor, but, whether directly or indirectly, early payoff is a modification and early payoff is not permissible.

The Trustee filed a motion to modify, arguing that the plan could not be paid off prior to expiration of the original applicable commitment period, and, that the additional money should be used to increase the distribution to unsecured creditors. However, the Trustee never pursued, and ultimately withdrew, her motion to modify. In June, the Garcias filed a motion to modify which was denied. However, the Garcias have reached the end of their plan term and it appears they are ready to receive their discharge. Thus, this dispute has been resolved by the passage of time.

## CONCLUSION

In chapter 13, the Bankruptcy Code creates a balance between certainty and flexibility—recognizing that debtors and creditors need to know as early as possible how the creditors will be repaid, but creating a framework where a change in circumstances, positive or negative, can give debtors, the trustee, or unsecured creditors an opportunity, where appropriate, to take advantage of that change. And where change is not possible for a chapter 13 debtor, the Bankruptcy Code even gives the ultimate out—the hardship discharge under 11 U.S.C. §1328(b).

Nonetheless, the ability to request that change, like the ability to seek hardship discharge, is not unlimited, and the Court serves as the gatekeeper. In this role, the Court must ensure that

---

[27] While section 1329(a) does allow modification to alter the applicable commitment period (so long as it does not exceed five years from the original petition date), under the reasoning of *Rhymaun*, the alteration cannot be less than three years over the objection of the trustee or creditor.

the ultimate goals of the Bankruptcy Code—a fresh start for debtors and fair distributions to creditors—are balanced and acknowledged throughout the bankruptcy process.

# # #

The Clerk of the Court shall serve a copy of this Order upon all parties in interest.